UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEREMIAH EDWARDS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 21 C 5665 |
| THOMAS DART, Sheriff of Cook County, and COOK COUNTY, ILLINOIS, | ) ) Judge Rebecca R. Pallmeyer ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jeremiah Edwards, a detainee at the Cook County Department of Corrections ("CCDOC"), seeks relief under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132. Edwards alleges that despite his repeated requests, the Defendants—Thomas Dart, in his capacity as the Sheriff of Cook County, and Cook County—failed to provide Edwards with a CPAP machine, which Edwards requires for treatment of his severe sleep apnea. Defendants have moved to dismiss the complaint for failure to state a claim [16]. For the reasons discussed below, this motion is denied.

## BACKGROUND

At this stage, the court accepts all factual allegations in Edwards' complaint as true and draws all reasonable inferences in his favor. *Kanter v. Barr*, 919 F.3d 437, 441 (7th Cir. 2019). In 2016, Edwards was evaluated by an unnamed physician and diagnosed with "severe sleep apnea," a condition that "substantially limits" his ability to sleep.[1] (Compl. [1] ¶ 5.) The physician

---

[1] Plaintiff is detained at CCDOC under the name "Henry Gilmore." (Compl. ¶ 2.) Some of the documents in this case refer to Plaintiff by that name. As of the issuance of this opinion, he has been detained for one year and eight months. (*See id.*) The complaint provides no information on when Edwards is likely to be released from CCDOC.

informed Edwards that "he should use a [CPAP] machine at all times when sleeping."[2] (*Id.*) With a CPAP machine, Edwards is able to sleep similarly to a nondisabled person. (*Id.* ¶ 6.) But when Edwards "attempts" to sleep without a CPAP machine, "he feels tired, stressed, [and] fatigued, stops breathing, experiences shortness of breath, fears for his life, and experiences pain and discomfort." (*Id.* ¶ 7.) Edwards was processed into CCDOC on December 16, 2020. (*Id.* ¶ 2). About eight months later, and apparently while still detained at CCDOC, Edwards underwent a sleep study.[3] (Sleep Study, Ex. 1 to Pl.'s Resp. [20-1], at 1.) The results showed that Edwards has "[s]evere obstructive sleep apnea that was successfully treated with CPAP."[4] (*Id.*) The study results further document that without a CPAP machine, Edwards had an apnea-hypopnea index (AHI) of 58.3, meaning that 58 times per hour he stopped breathing for at least ten seconds.[5] (*Id.*; *see* Pls.' Resp. [20] at 2.)

When Edwards was taken into custody in December 2020, CCDOC was not allowing "virtually any" inmates to use a CPAP machine. (Compl. ¶ 9.) This had been the practice since March 2020. (*Id.*) At some point (the complaint does not say when), Defendants explained to detainees (the complaint does not make clear whether this included Edwards) that "it was not safe to use [CPAP] because of COVID-19." (*Id.*) On March 5, 2021, while the practice was still in place, Edwards filed a grievance in which he stated: "I am suppose[d] to be on a sleep machine

---

[2] CPAP stands for continuous positive airway pressure; it is "a machine that uses mild air pressure to keep breathing airways open while [the user] sleep[s]." *See* https://www.nhlbi.nih.gov/health/cpap (last visited August 16, 2022).

[3] Edwards has provided minimal information about this sleep study, including whether it was ordered by CCDOC. The document only shows that it was conducted by "Cook County Health" on August 10, 2021. (Sleep Study at 1.)

[4] The court may consider documents attached to Edwards' response to Defendants' motion to dismiss, to the extent such documents elaborate on and are consistent with his factual allegations. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

[5] Someone with no or minimal sleep apnea would have an AHI level below 5; an AHI of 30 or more is classified as severe sleep apnea. *See* https://sleep.hms.harvard.edu/education-training/public-education/sleep-and-health-education-program/sleep-health-education-34 (last visited August 16, 2022).

due to m[y] having a sleeping disorder. Recently, I have stop[ped] breathing in my sleep [and have been] waking [up] short of breath . . . . I reached out to Health Services and was not treated for my condition." (Ex. 2 to Pl.'s Resp. [20-2], at 1.) Edwards apparently complained about being denied a CPAP machine several more times: On March 13, 2021, Edwards filed another grievance, noting that it was his fourth grievance regarding his sleep disorder. (Ex. 3 to Pl.'s Reps. [20-3], at 1.) He filed another grievance two days later, on March 15. (*Id.* at 2.)

By March 26, 2021, Defendants had determined that it was safe for detainees to use CPAP machines, but only in one-person cells. (Compl. ¶ 10.) Edwards alleges that, as of this date, Defendants "were on notice of [his] repeated requests . . . for an accommodation" and that he had "submitted health service request forms and grievances pleading with jail officials to provide a [CPAP] machine," presumably referring to the above-described grievances. (*Id.* ¶ 12.) Edwards further alleges that Defendants "have been on notice of a need to take steps to accommodate detainees who use [CPAP] machines" since 2014, when the Justice Department told Defendants "to retrofit certain rooms with electrical outlets for [CPAP] users." (*Id.* ¶ 8.)

Although CCDOC had enough single cells for all inmates in need of CPAP service as of March 26, 2021 (*id.* ¶ 11), Edwards was not immediately transferred to a single cell. It was only about four and a half months later, on August 12, 2021, that Edwards was transferred and provided with a CPAP machine to use "only during the evenings." (*Id.* ¶ 13.) Edwards alleges that there was "no justification" for Defendants waiting until this date to provide him a CPAP machine. (*Id.* ¶ 14.) As of the date he filed this lawsuit, Defendants continued to prohibit Edwards from using the CPAP machine between 8:00 a.m. and 9:00 p.m., though nondisabled inmates are permitted to sleep during these hours. (*Id.* ¶ 15.) Edwards "has complained to jail officials about the ongoing discrimination," but Defendants "refuse to take any measures to accommodate [him]." (*Id.* ¶ 16.)

In October 2021, Edwards filed this lawsuit, alleging that "Defendants have been and continue to be deliberately indifferent to [his] rights under the ADA." (*Id.* ¶ 17.) He requests injunctive relief, compensatory damages, and other appropriate relief. (*Id.* ¶ 18.)

## DISCUSSION

Defendants Dart and Cook County have moved to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss, the complaint must 'state a claim to relief that is plausible on its face.'" *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 564–65 (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

Plaintiff Edwards brings his claim under Title II of the ADA. This statute provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title II does not contain a specific provision concerning the requirement of accommodation. But its implementing regulations require public entities to "make reasonable modifications," *see* 28 C.F.R. § 35.130(b)(7)(i),[6] and the Supreme Court has located such a duty in the text of the materially identical—and identically interpreted—Rehabilitation Act.[7] *See Alexander v. Choate*, 469 U.S.

---

[6] "EEOC regulations interpreting the ADA are entitled to deference . . . unless they are 'arbitrary, capricious, or manifestly contrary to the statute.'" *Richardson v. Chicago Transit Auth.*, 926 F.3d 881, 887 (7th Cir. 2019) (quoting *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)).

[7] Title II of the ADA was modeled after Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. *See Washington v. Indiana High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 845 n.6 (7th Cir. 1999). "[T]he elements of claims under the two provisions are nearly identical, and precedent under one statute typically applies to the other." *Id.*; *accord Lacy v. Cook Cnty., Ill.*, 897 F.3d 847, 852 n.1 (7th Cir. 2018). The primary difference is that the Rehabilitation Act "includes as an additional element the receipt of federal funds, which all states accept for their prisons." *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012).

287, 301 (1985) (the Act requires "meaningful access" to benefits; "to assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made"); *Southeastern Cmty. Coll. v. Davis*, 442 U.S. 397, 412–13 (1979) ("[A] refusal to modify an existing program might become unreasonable and discriminatory."). The Seventh Circuit has therefore concluded that a failure to provide reasonable accommodations is one method of proving that the defendant acted "by reason" of the plaintiff's disability (the other methods are discriminatory intent and disparate impact). *See A.H. by Holzmueller v. Illinois High Sch. Ass'n*, 881 F.3d 587, 592–93 (7th Cir. 2018); *see also Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 751 (7th Cir. 2006) ("[F]ailure to accommodate is an *independent* basis for liability under the ADA.").

To reiterate, Edwards must plausibly allege that (1) he is a "qualified individual with a disability," (2) he was denied "the benefits of the services, programs, or activities of a public entity" or otherwise subjected to discrimination by such an entity, and (3) the denial or discrimination was "by reason of" his disability. 42 U.S.C. § 12132; *see Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015). To establish the third element, a plaintiff may (as Edwards has here) allege that the defendant refused to provide reasonable accommodations. In their motion to dismiss, Defendants take issue with each element of Edwards' Title II claim.

I. **Qualified Individual with a Disability**

The ADA defines "disability" as (1) a physical or mental impairment that substantially limits a major life activity, (2) a record of such impairment, or (3) being regarded as having an impairment. *Richardson v. Chicago Transit Auth.*, 926 F.3d 881, 888 (7th Cir. 2019) (citing 42 U.S.C. § 12102(1)). Edwards relies on the first definition, alleging that his severe sleep apnea substantially limits his ability to sleep. Defendants do not contest that sleep apnea is an impairment. *See* 29 C.F.R. § 1630.2(h)(1) (defining physical impairment to include "[a]ny physiological disorder or condition . . . affecting one or more body systems"); *Shell v. Burlington N. Santa Fe Ry. Co.*, 941 F.3d 331, 335 (7th Cir. 2019) (noting that sleep apnea "undisputedly" qualifies as an impairment). Nor do Defendants contest that sleeping is a major life activity. *See*

5

42 U.S.C. § 12102(2)(A) (defining major life activities to include, among other things, sleeping). Defendants argue only that sleep apnea does not substantially limit Edwards' ability to sleep.

Some background on the definition of "substantially limits": In *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002), the Supreme Court interpreted this term narrowly, holding that in order to qualify as a disability, an impairment must "prevent[] or severely restrict[]" a major life activity. But Congress abrogated *Toyota* in the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553, finding that the Court had "created an inappropriately high level of limitation necessary to obtain coverage under the ADA." *Richardson*, 926 F.3d at 888 (quoting ADAAA § 2(b)(5)). The implementing regulations followed Congress's directive to relax "how severe an impairment must be to be considered a disability." *Id*; *see* 29 C.F.R. § 1630.2(j)(1)(i) ("'Substantially limits' is not meant to be a demanding standard"); *id.* § 1630.2(j)(1)(ii) ("An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting."). The ADAAA itself also expanded the definition of "substantially limits." *See* 42 U.S.C. § 12102(4)(D) (an "episodic or in remission" impairment is a disability if substantially limiting "when active"); *id.* § 12102(E)(i) (the substantially limiting determination is "made without regard to the ameliorative effects of mitigating measures"). The ADAAA also provided a list of example "major life activities" (including sleeping, breathing, concentrating, and thinking) and added "the operation of a major bodily function" (including respiratory functions) as a new category of major life activities. *Id.* § 12102(2)(A), (B).

Turning to Edwards' allegations, the court concludes that he has adequately pleaded a disability. According to Edwards, he was diagnosed with "severe sleep apnea" in 2016; when he tries to sleep without a CPAP machine, he (among other things) stops breathing, fears for his life, and experiences pain and discomfort. (Compl. ¶¶ 5, 7.) A sleep study provided by Edwards shows that without a CPAP machine, he stopped breathing about 58 times per hour—an average of almost once every minute. (Sleep Study at 1.) Defendants nonetheless claim that Edwards

6

has only alleged symptoms, not how these symptoms affect his ability to sleep. But the court has no difficulty inferring that his alleged symptoms—which include *not being able to breathe*—substantially limit his ability to sleep. Moreover, though the parties do not focus on this, the complaint plausibly suggests that sleep apnea and its attendant breathing problems substantially limit the operation of Edwards' respiratory functions. *See* 42 U.S.C. § 12102(2)(B).

For the first time in their reply brief, Defendants rely on numerous cases (primarily from outside this circuit) to argue that the symptoms of sleep apnea are too minor to constitute "a substantial impairment." (Defs.' Reply [21] at 4.) To the extent this argument is not waived, it fails on the merits. Defendants' cited cases all apply the narrower, pre-ADAAA definition of "disability," which required a *severe* restriction on a major life activity. *See Toyota*, 534 U.S. at 198. The cited cases therefore considered evidence or allegations of plaintiff's symptoms to determine whether they were severe enough to meet that old definition.[8] These cases do not support Defendants' suggestion that sleep apnea is categorically excluded from the ADAAA's broader definition of disability.

---

[8] Because the ADAAA does not apply retroactively, the old version of the ADA and precedent interpreting that older version govern claims based on conduct that occurred prior to January 1, 2009. *See EEOC v. AutoZone, Inc.*, 630 F.3d 635, 641 nn.2–3 (7th Cir. 2010). Defendants' cited cases all concern conduct occurring before that date. *See Ramage v. Rescot Sys. Grp., Inc.*, 834 F. Supp. 2d 309, 319 n.8 (E.D. Pa. 2011) (because the challenged conduct occurred prior to January 1, 2009, "the Court must apply the narrower, pre-ADAAA, interpretation of 'disability' to [plaintiff's] claims"); *accord Brewington v. Getrag Corp.*, No. 5:09CV31-V, 2011 WL 4829399, at *3 (W.D.N.C. Oct. 12, 2011); *see also Keyes v. Cath. Charities of the Archdiocese of Philadelphia*, 415 F. App'x 405, 407–08 (3d Cir. 2011) (considering conduct from 2005 to 2007); *Kolecyck-Yap v. MCI Worldcom, Inc.*, No. 99 CV 8414, 2001 WL 245531, at *1 (N.D. Ill. Mar. 12, 2001) (considering conduct during and before 1998).

None of these cases—most of which evaluated medical evidence on a summary judgment record and all of which considered the narrower definition of "disability"—support dismissal at the pleading stage. *See Keyes*, 415 F. App'x at 409 (concluding that "aside from the sleep study showing that plaintiff was asleep 77.3% of the time he was in bed and his testimony that he had trouble sleeping, there is little evidence that his sleep was severely disrupted"); *Ramage*, 834 F. Supp. 2d at 321 (noting "the minimal record evidence of [plaintiff's] difficulty sleeping"); *Kolecyck-Yap*, 2001 WL 245531, at *10 (requiring evidence that plaintiff's "sleep apnea was so severe, so pervasive, and so non-treatable that it caused a substantial limitation"); *see also Brewington*, 2011 WL 4829399, at *5 (plaintiff offered only a "conclusory statement that he suffers from sleep apnea").

7

This court notes (though Defendants do not) that the Seventh Circuit has also considered whether sleep apnea qualifies as a disability—but only under the earlier definition. In a line of pre-ADAAA cases, the Seventh Circuit held, on summary judgment records, that sleeping difficulties amount to a substantial limitation on sleeping only if "prolonged, severe and long-term." *Scheerer v. Potter*, 443 F.3d 916, 920 (7th Cir. 2006); *accord Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 784 (7th Cir. 2007); *Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 757 (7th Cir. 2006). Relying on this caselaw, the Seventh Circuit has concluded, again on summary judgment records, that sleep apnea may or may not be a disability, depending on evidence of its severity. *Compare Feldman v. Olin Corp.*, 692 F.3d 748, 754, 752 (7th Cir. 2012) (plaintiff "presented significant evidence of severe sleep problems," including a sleep study that his sleep was rated as "very poor"), *with Tate v. Ancell*, 551 F. App'x 877, 885 (7th Cir. 2014) (plaintiff's "inability to sleep for more than four hours per night by itself was not sufficient," where he gave "no reason . . . to revisit the cases that the district court relied on," including *Scheerer* and *Squibb*).[9]

It does not appear that the Seventh Circuit has revisited this precedent under the ADAAA. But this court concludes that the previous requirement for "severe" and "long-term" or "prolonged" sleeping difficulties cannot survive those amendments. *See* 29 C.F.R. § 1630.2(j)(1)(ii) (an impairment need not "significantly or severely restrict" the major life activity); 42 U.S.C. § 12102(4)(D) (an episodic impairment may qualify as a disability). In any event, these cases—which were all decided on summary judgment records—do not control here, where the court must determine whether Edwards' allegations, construed in the light most favorable to his claim, are sufficient. *Cf. Homeyer v. Stanley Tulchin Assocs., Inc.*, 91 F.3d 959, 962 (7th Cir. 1996) (whether an impairment is substantially limiting is "a fact-based inquiry and determination is not generally

---

[9] Like Defendants' cited cases, these Seventh Circuit cases on sleep apnea concerned conduct that occurred prior to January 1, 2009, meaning the claims were governed by pre-ADAAA caselaw. *See Feldman*, 692 F.3d at 753 n.1 (plaintiff's "claim is controlled by the earlier definition" of disability); *Tate*, 551 F. App'x 877, 880 (challenged conduct occurred during and prior to 2008).

motion to dismiss territory"). And even if the earlier ADA caselaw applied, the court is satisfied that Edwards' allegations—including his 2016 diagnosis, his breathing and pain-related symptoms, and the sleep study—plead severe and prolonged sleeping difficulties. The veracity of Edwards' allegations and any counterevidence from Defendants must be left for a later date. *See Smith v. Dart*, No. 20 C 1381, 2020 WL 7260802, at *1, 3 (N.D. Ill. Dec. 10, 2020) (allegation that plaintiff "experiences shortness of breath" sufficed; "further factual development will reveal the extent to which his [sleep apnea] limits one or more major life activities").[10]

## II. Program, Activity, Service

Defendants also argue that Edwards has not established the second element of his ADA claim: that "the defendant's action or inaction prevents the plaintiff from participating in a program, activity or service." *Holmes v. Godinez*, 311 F.R.D. 177, 226 (N.D. Ill. 2015). In their opening brief, Defendants argue only that Edwards was not prevented from sleeping; for the first time in their reply, Defendants additionally argue that sleeping is not a program, activity, or service. This latter argument is waived, *see, e.g.*, *United States v. Desotell*, 929 F.3d 821, 826 (7th Cir. 2019), and neither argument is persuasive.

### A. Sleeping

Title II of the ADA does not explicitly define "services, programs, or activities." *Ashby v. Warrick Cnty. Sch. Corp.*, 908 F.3d 225, 231 (7th Cir. 2018). The implementing regulations interpret the term broadly, however: Title II applies "to all services, programs, and activities provided or made available by public entities" and "anything a public entity does." *Id.* (quoting 28 C.F.R. § 35.102; *id.* pt. 35, app. B) (emphasis removed). The limited caselaw interpreting the

---

[10] Judge Mary Rowland of this district has considered several lawsuits in which, as here, plaintiff inmates who suffer from sleep apnea have alleged that CCDOC refused to provide them with CPAP machines. In each case, Judge Rowland denied Defendants' motions to dismiss, with substantively identical memorandum opinions. *See Smith v. Dart*, 2020 WL 7260802, at *1; *Cotledge v. Dart*, No. 20 C 2629, 2020 WL 7260798, at *1 (N.D. Ill. Dec. 10, 2020); *Green v. Dart*, No. 20 C 1459, 2020 WL 7260800, at *1 (N.D. Ill. Dec. 10, 2020). This court refers to *Smith v. Dart* when citing to Judge Rowland's reasoning.

9

term also emphasizes its "breadth." *Id.* For instance, in holding that Title II applies to state prisons, the Supreme Court noted that "[m]odern prisons provide inmates with many recreational 'activities,' medical 'services,' and educational and vocational 'programs,' all of which at least theoretically 'benefit' the prisoners (and any of which disabled prisoners could be 'excluded from participation in')." *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). In another case, the Court explained that prison officials' alleged failure to accommodate "disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs" plausibly constituted a denial of the prison's services, programs, or activities. *United States v. Georgia*, 546 U.S. 151, 157 (2006). The Seventh Circuit has therefore held (under the materially identical Rehabilitation Act) that state prisons cannot deny prisoners access to "recreation," *Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012), or "meals and showers." *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012).

This court concludes that state jails must ensure access to sleeping as well. Whether the "program, activity, or service" is characterized as access to sleep itself or access to adequate sleeping facilities, these are "fundamentals" of living in incarceration. *See Georgia*, 546 U.S. at 157. That means—just like medical services, hygiene, mobility, meals, showers, and other necessities—sleep and sleeping facilities are covered by Title II. *See id.*; *see also Smith*, 2020 WL 7260802, at *3–4 (holding that sleeping is a program or activity); *Simmons v. Godinez*, No. 16 C 4501, 2017 WL 3568408, at *6 (N.D. Ill. Aug. 16, 2017) (collecting cases from this circuit holding that prisons must provide access to beds). Defendants nonetheless contend that they are only required to provide "a place to sleep" and "tools" generally used for sleeping—such as a "a bed, darkness, mattress, and time"—but not a CPAP machine, which is "an additional, generally not required" medical device. (Defs.' Reply at 6.) But it is irrelevant whether a CPAP machine is *generally* required; it matters whether this is a reasonable accommodation to ensure that Edwards himself is "able to access those fundamental activities of daily living that the ADA . . . seek[s] to guarantee." *Simmons*, 2017 WL 3568408, at *6. For example, prisons do not

10

generally provide a ladder, assistive device, or low-bunk pass as sleeping tools—but if a mobility limited prisoner cannot access his top bunk, the prison may be required to provide these accommodations. *See id.* So, too, may the ADA require a prison to provide a CPAP machine.

Defendants additionally argue that sleeping cannot be a service, program, or activity under *Bryant v. Madigan*, 84 F.3d 246 (7th Cir. 1996). There, the prison had refused plaintiff's request for guardrails on his bed; plaintiff (who was a paraplegic) then fell out of bed, broke his leg, and sued for inadequate medical treatment. *Id.* at 247. After expressing strong doubt that the ADA applies to state prisoners (the Supreme Court later held that it does), the Seventh Circuit concluded that, assuming the ADA did apply:

> [It] would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners. No discrimination is alleged; [Plaintiff] was not treated worse because he was disabled. His complaint is that he was not given special accommodation. . . . [Plaintiff] is complaining about incompetent treatment of his paraplegia. The ADA does not create a remedy for medical malpractice.

*Id.* at 249. In passing, the Seventh Circuit noted that "[s]leeping in one's cell is not a 'program' or 'activity.'" *Id.* Numerous courts in this district have distinguished *Bryant*. *See Smith*, 2020 WL 7260802, at *3 (explaining that *Bryant* was decided before the Supreme Court and Seventh Circuit decisions discussed above); *Simmons*, 2017 WL 3568408, at *6 (same, and characterizing the statement about sleeping as "dicta"); *Paine ex re. Eilman v. Johnson*, No. 06 C 3173, 2010 WL 785397, at *8 (N.D. Ill. Feb. 26, 2010) (limiting *Bryant* as applying to cases "in which an ADA claim is brought as a disguised medical malpractice claim"). This court agrees. Even assuming that *Bryant* applies to a typical failure to accommodate case (it does not) and that the statement about sleeping is something besides dicta (it is not), subsequent Supreme Court and Seventh Circuit decisions demonstrate that access to sleep and sleeping facilities is covered by Title II.

**B.      Denial**

Defendants also contend that, even if sleeping is a program, activity, or service, Edwards has not alleged a denial of sleeping, just a denial of his requested accommodation (the CPAP machine). To state a failure to accommodate claim, a prisoner must allege that the prison's failure

11

to provide accommodations kept him from accessing programs, services, or activities "on the same basis as other inmates." *Jaros*, 684 F.3d at 672; *accord Shuhaiber v. Illinois Dep't of Corr.*, 980 F.3d 1167, 1170 (7th Cir. 2020). Although the Seventh Circuit has explained that "[r]efusing to make reasonable accommodations is tantamount to denying access," *Jaros*, 684 F.3d at 672, it does not appear that every refusal to accommodate effectuates a denial. A mere "inconvenience"—even one stemming from the refusal to provide a requested accommodation—does not amount to a denial of access. *See Shuhaiber*, 980 F.3d at 1170 (quoting *Wagoner*, 778 F.3d at 593).[11] The line between a mere inconvenience and a more serious denial of access is not a bright one.

On the "inconvenience" side are *Shuhaiber* and *Wagoner*. Shuhaiber (who used a wheelchair) alleged that vans transporting him to medical appointments were not ADA-compliant and that his small cell made it difficult to maneuver, get into bed, and use a table. *Shuhaiber*, 980 F.3d at 1169. The Seventh Circuit explained that while Shuhaiber alleged "difficulties" with these facilities, he "did not say anything about his particular circumstances or accommodations that kept him from accessing the [prisons'] facilities or services on the same basis as other inmates," or allege that he "miss[ed] medical appointments because of the inadequacy of the [prison's] vans." *Id.* at 1170. Similarly, in *Wagoner*, the prison failed to provide Wagoner a wheelchair-ready van or an adequate wheelchair backrest; Wagoner alleged that this "impeded" his access to certain facilities. 778 F.3d at 593. In support, however, he alleged only that "he was inconvenienced with longer waits and humiliation," such as crawling off the regular van; this "d[id] not amount to

---

[11] In *Wagoner* (where, as discussed below, the prison failed to repair the backrest on plaintiff's wheelchair), the Seventh Circuit noted, without elaboration: "Wagoner could have claimed that the wheelchair itself is a service under either [the ADA or Rehabilitation Act], because it is necessary to accommodate his paraplegia, but IDOC provided Wagoner with a new wheelchair before he filed his grievance about the backrest." *Wagoner*, 778 F.3d at 593. This suggests that, at least in some circumstances, an accommodation may itself be a service under the ADA, meaning a failure to accommodate inherently effectuates a denial of services. The parties have not briefed whether a CPAP machine is a service, and the court will not consider this theory.

12

a denial of services within the meaning of [the ADA]." *Id.* In reaching this conclusion, the Seventh Circuit noted that unlike the prisoner in *Love v. Westville Correctional Center*, 103 F.3d 558 (7th Cir. 1996), Wagoner did not allege that he was "denied all access to some programs and activities" or that "his access to others was severely limited." *Id.* (quoting *Love*, 103 F.3d at 560).

But while alleging a complete denial of services is clearly sufficient to survive a motion to dismiss, it is not necessary to allege a complete denial in order to state a claim. In *Jaros*, the plaintiff (who suffered hip problems) alleged that the absence of grab bars made it "more difficult" for him to access the prison's toilets, showers, and hallways. 684 F.3d at 671. Though this caused him to miss meals "on occasion" (because he could not quickly walk to the cafeteria) and to limit himself to four showers monthly (because he feared falling), the complaint did not allege that Jaros was "deprived" of these facilities. *Id.* at 699, 671. The allegations nonetheless stated a claim, the Seventh Circuit concluded, because "[t]he refusal to accommodate Jaros's disability kept him from accessing meals and showers on the same basis as other inmates." *Id.* at 672. Following *Jaros*, courts in this district have confirmed that a complete denial of access is not necessary, so long as the plaintiff adequately alleges that the failure to accommodate prevented access on the same basis as others. *Compare Boston v. Dart*, No. 14 C 8680, 2015 WL 4638044, at *3 (N.D. Ill. Aug. 4, 2015) (plaintiff's wheelchair did not fit under tables "which all detainees used for meals and leisure activities"; although he did not "completely miss meals or leisure activities," he adequately alleged access "on a different basis than other detainees")*, with Harper v. Dart*, No. 14 C 1237, 2015 WL 6407577, at *4 (N.D. Ill. Oct. 21, 2015) (plaintiff failed to meet pleading standards by only alleging "great difficulty" in showering, toileting, and getting into bed, because "[t]hose two words alone do not explain how [plaintiff] was denied equal access").

Edwards has adequately alleged that Defendants' refusal to provide a CPAP machine prevented him from accessing sleep on the same basis as nondisabled inmates. Defendants contend that Edwards has merely alleged "that he is not given access to the CPAP machine," not "that he was unable to sleep as a result." (Defs.' Reply at 8.) This argument is meritless.

13

According to the complaint, when Edwards "attempts to engage in the program or activity of sleeping" without a CPAP machine, he faces severe symptoms (including pain, discomfort, and an inability to breathe) that limit his ability to sleep, as discussed above.[12] (Compl. ¶ 7.) The court reasonably infers that the lack of CPAP machine caused Edwards to miss sleep, while nondisabled detainees (who are able to breathe and sleep without a CPAP machine) do not miss sleep. The court additionally concludes that the symptoms Edward experiences without the CPAP machine go beyond mere inconveniences (such as difficulties getting into a van or maneuvering in a cell, as in *Shuhaiber* and *Wagoner*) and effectively constitute a denial of his ability to sleep. *Cf. Jones v. Olson*, No. 14 C 3068, 2016 WL 1060831, at *5 (C.D. Ill. Mar. 17, 2016) (upholding jury verdict against a prison for not allowing plaintiff (who suffered severe pain if he did not use a bathroom) to use a bathroom near the library; this "suffering effectively deprived Plaintiff of access to the library [], even though he was physically present in the library").

Defendants' other argument—that the ongoing prohibition on CPAP machines during the day does not amount to a denial of access—is a closer question, but the court concludes that the daytime prohibition allegation states a Title II claim as well. Edwards alleges that nondisabled inmates are allowed to sleep during the day; as established above, he is effectively deprived of this opportunity, made available to others, because he lacks a CPAP machine. His allegations plausibly suggest that Edwards' ability and opportunities to sleep are materially less than and unequal to other inmates. *See Smith*, 2020 WL 7260802, at *4 (similar allegations stated a claim).

---

[12] Defendants also emphasize one line from Edwards' response brief: that "when Plaintiff does not use the CPAP machine and *engages in* the program or activity of sleeping, he stops breathing, experiences shortness of breath, and fears for his life." (Pl.'s Resp. at 5 (emphasis added).) According to Defendants, this statement concedes that Edwards can sleep without a CPAP machine and so Defendants could not have deprived him of this benefit. (Defs.' Reply at 5.) The court rejects this strained reading of Edwards' allegations. His well-pleaded factual allegations of the complaint establish that, even if Edwards is able to sleep for a few minutes or hours at a time, the lack of a CPAP machine prevents him from sleeping on the same basis as other inmates.

**III.     Causation**

Finally, Defendants argue that Edwards has not established the third element of his ADA claim: that he was denied benefits "by reason" of his disability. 42 U.S.C. § 12132. This language imposes a "but-for causation test:" the plaintiff must show "that, 'but for' his disability, he would have been able to access the services or benefits desired." *Holzmueller*, 881 F.3d at 593 (quoting *Wisconsin Cmty. Servs.*, 465 F.3d at 752). Additionally, while this language "suggests that proof of disability discrimination requires intent," courts "have made clear that other methods of proving disability discrimination are available"—including, as relevant here, that the defendant refused to provide a reasonable accommodation. *Id.* at 592–93.

The complaint adequately pleads causation. Edwards seeks to access the benefits of sleeping; he asserts that but for his disability, he would be able to sleep without interruption. Unlike most challenges to causation in failure-to-accommodate claims, Defendants here have not argued that Edwards would be unable to access his desired benefit even without his disability, and could not make such an argument at the pleading stage. *Cf., e.g.*, *Holzmueller*, 881 F.3d at 594 (affirming summary judgment against a disabled runner seeking to qualify for the "extremely competitive" state championship, because "[t]he odds are overwhelming that runners like [plaintiff] would not meet the qualifying times even if they were not disabled").

Instead, Defendants contend that Edwards has not "alleged any purpose or reason" for denying his CPAP machine request. (Defs.' Reply at 8.) But Edwards has plausibly alleged a failure to accommodate; Defendants offer no caselaw suggesting that he must also offer allegations of discriminatory intent.[13] Nor could they: under Seventh Circuit precedent,

---

[13] Once again, Defendants' briefing strategy is less than ideal. In their opening brief, they simply state—without citations or any substantive argument—that "Plaintiff has not alleged that Defendants took this action 'because of' his disability rather than other factors." (Defs.' Mem. [16] at 6.) Only in their reply memorandum do Defendants cite to any cases. But these citations do not bolster their argument. They again cite to *Bryant v. Madigan*, 84 F.3d 246, which is distinguishable for the reasons discussed, and *Harper v. Dart*, 2015 WL 6407577, at *4, where plaintiff alleged only "two words" in support of his ADA claim. Similarly inapposite is Defendants' reliance on cases that were not addressing ADA claims, but instead considered whether plaintiffs

15

discriminatory intent is only *one* method of establishing that the defendant's action was "by reason" of the plaintiff's disability. *Washington v. Indiana High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 847 (7th Cir. 1999). It is also "possible to demonstrate discrimination on the basis of disability by a defendant's refusal to make a reasonable accommodation." *Id.* at 848. In that case, "the plaintiffs need not prove that the [defendant] intended to discriminate on the basis of disability," just that the defendant refused to make a reasonable accommodation. *Id.*

Moreover, Edwards *has* alleged a "purpose or reason" for the denial of a CPAP machine: Defendants purportedly believed these machines were unsafe because of COVID-19. (*See* Compl. ¶ 9.) But Defendants provide no substantive argument that COVID-19 renders Edwards' request for a CPAP machine unreasonable as a matter of law. Instead, they cursorily assert that Edwards asks for a "special" accommodation and that Defendants have no obligation to make it "easier" for Edwards to sleep or nap. (Defs.' Reply at 9.) In any event, determining whether an accommodation is reasonable is typically inappropriate on a motion to dismiss, as it "is a highly fact-specific inquiry and requires balancing the needs of the parties." *Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002); *see, e.g.*, *Smith*, 2020 WL 7260802, at *4 ("Although Defendants may have had a good reason for removing the CPAP machine . . . . [d]eciding or accepting Defendants' reason for removing the machine at this stage would be inappropriate."). Defendants offer no reason to break with this typical rule, and the court sees none.

---

had alleged an unconstitutional denial of medical care. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *Livergood v. Quality Corr. Care, LLC*, No. 3:19CV730-PPS/MGG, 2019 WL 5887635, at *2 (N.D. Ind. Nov. 12, 2019).

## **CONCLUSION**

For the reasons discussed above, Plaintiff Edwards has plausibly alleged a failure to accommodate claim under Title II. Defendants' motion to dismiss [16] is denied. Defendants are directed to file their answer on or before September 9, 2022.

ENTER:

Date: August 17, 2022

_____
REBECCA R. PALLMEYER
United States District Judge